### 6760. FORD MOTOR COMPANY v. JOHNSON.

WADE, C. J. The contract between the manufacturing company and the dealer recited that the latter estimated that he would take delivery of not less than 36 automobiles between the date of the contract and September 30, 1913, and that he would purchase a specified number of automobiles during each of the months covered by the contract. There was an express agreement therein that "failure on the part of the dealer-licensee to purchase the number of Ford automobiles in any one month, as above specified, gives the manufacturer-licensor the right and privilege to cancel this license-agreement, such right or privilege, however, being the limit of liability for such failure on the part of the dealer-licensee;" and there was a further provision that "failure on the part of the manufacturer-licensor to supply the dealer-licensee with the number of Ford automobiles in any one month, as above specified, gives the dealer-licensee the right and privilege to cancel this license-agreement, such right or privilege, however, being the limit of liability for such failure on the part of the manufacturer-licensor. All orders for automobiles which the dealer-licensee may place with the manufacturer-licensor shall be transmitted upon order blanks furnished by the manufacturer-licensor for that purpose, the manufacturer-licensor expressly reserving the right to accept said orders on such terms and conditions as it may elect, when not incon-

sistent with anything else herein contained, and when so accepted and acknowledged are subject to any delays occurring in the manufacture or delivery of its product from any cause whatsoever." During the life of the contract the dealer ordered seven automobiles, and the order was accepted by the manufacturer; and he ordered also from the manufacturer's manager in Atlanta, Georgia, a certain roadster, and the manager accepted this order and agreed to fill it at a time subsequent to the expiration of the contract between the dealer and the manufacturer. The manufacturer declined to ship any of the seven automobiles. *Held:*

1. While, under the contract, the dealer had the right and privilege to cancel the agreement with the manufacturer on failure of the manufacturer to supply him with the number of automobiles in any one month as specified in the contract, and this right or privilege would fix the limit of liability for such failure on the part of the manufacturer, and while the manufacturer reserved in the contract the right to accept orders for automobiles on such terms and conditions as it might elect, when not inconsistent with the remaining provisions of the contract, and such orders when so accepted were subject to delays occurring in the manufacture or delivery of its product from any cause whatsoever, yet where the manufacturer, during the existence of the contract, did in fact accept orders for automobiles ordered thereunder, and agreed to ship them, a subsequent failure and refusal to ship them in compliance with the agreement created a liability on the part of the manufacturer to the dealer for the amount of loss thereby occasioned to the latter. It was the privilege of the manufacturer to decline orders altogether from the dealer, and in such case the limit of liability was fixed by the contract as being the right thereby conferred upon the dealer to cancel the agreement; but after the acceptance of orders, regardless of whether previous breaches of the contract had been made by the dealer or not, such acceptances would constitute a waiver on the part of the manufacturer to complain of such breaches, so far as the orders accepted might be concerned, and would create an obligation to comply with the terms of the orders. There was no evidence tending to show that the filling of the orders accepted and acknowledged by the manufacturer was delayed from any cause arising in the manufacture of the machines, but the evidence disclosed a refusal to ship, and thus showed a clear breach of the contract created by the acceptance of the orders. If the manufacturer saw fit to waive the right to cancel and agreed to fill such orders, the dealer would be bound to receive the automobiles ordered by him, and the manufacturer would be liable for damages on failure to carry out its contract.

2. The question whether there was an accord and satisfaction or a final adjustment of all matters arising from the contract was submitted in proper instructions to the jury, and there was evidence from which they were authorized to find that the particular differences between the plaintiff and the defendant, growing out of the refusal of the defendant to ship the automobiles ordered by the plaintiff, in

accordance with its acceptance of such orders, were not included in the settlement effected between the parties, and were not contemplated or considered in the final negotiations between them, and that the remittances exchanged between the plaintiff and the defendant were not made in pursuance of any final settlement of all demands and counter-demands arising under the contract.

3. The several special grounds of the motion for a new trial relate, either directly or indirectly, to the construction of the contract between the parties by the trial court, and, in the light of what is held above, need not be more specifically referred to. Under our ruling there is no merit in any of these grounds. There was evidence sufficient to authorize the finding of the jury, and the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed.*

DECIDED JULY 6, 1916.

Action on contract; from city court of Americus—Judge Harper. June 21, 1915.

*L. B. Robertson, Bryan & Middlebrooks, W. W. Dykes,* for plaintiff in error. *Shipp. & Sheppard,* contra.

DECIDED JULY 6, 1916.

